UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

EDMOND M. STANLEY, JR,

    Plaintiff,

v.

CAPITAL ONE FINANCIAL CORPORATION

    Defendant.

                                   /

CASE NO.: 7:19-at-99999  7:19cv337

**DEMAND FOR TRIAL BY JURY**

## COMPLAINT

Plaintiff, EDMOND M. STANLEY, JR (hereinafter "Plaintiff"), by and through the undersigned counsel, sues Defendant, CAPITAL ONE (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably

intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff, EDMOND M. STANLEY, JR (hereinafter "Consumer"), is an individual residing in Roanoke City, Virginia.

6. Jurisdiction and venue, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA which occurred in this District.

7. Subject matter jurisdiction and federal question jurisdiction, for purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, which provides that the District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and, this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). *See Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1249 (11th Cir. 2014).

8. Venue is proper in this District as the Consumer is located within this District, in Roanoke City, Virginia.

## FACTUAL ALLEGATIONS

9. Consumer is a natural person and citizen of the State of Virginia, residing in Roanoke, Virginia.

10. Consumer is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

11. Defendant is a corporation responsible for attempting to collect an alleged consumer debt from Consumer.

12. Defendant is a corporate entity with its principal place of business located at 1680 CAPITAL ONE DRIVE, MCLEAN, VA, 22102-3491, has a registered agent, CORPORATION SERVICE COMPANY located at 100 Shockoe Slip Fl 2, Richmond, VA 23219, and which conducts business within the Commonwealth of Virginia.

13. Consumer is the subscriber, regular user and carrier of the cellular telephone number at issue in this action, (540) XXX-4132 (hereinafter "cellular telephone"), and was the called party and recipient of Defendant's hereinafter described calls.

14. Defendant intentionally, knowingly and/or willfully harassed and abused Consumer on numerous occasions by calling Consumer's cellular telephone, within the last four years, with such frequency as can reasonably be expected to harass and in effort to collect upon an alleged debt.

15. Upon information and belief, some or all of the calls Defendant placed to Consumer's cellular telephone were placed using an "automatic telephone dialing system" (hereinafter "Autodialer"), which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

16. Furthermore, each of the calls at issue were placed by Defendant using an artificial or prerecorded voice, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

17. Many of the calls either began with an automated voice or left an automated or prerecorded message.

18. Consumer was also connected to different individuals on different calls, indicating that the calls were assigned to representatives by the automatic telephone dialing system.

19. Within the last four years, Defendant began bombarding Consumer's cellular telephone in attempt to collect an alleged debt arising from identity theft.

20. Upon receipt of the calls, Consumer's caller identification feature identified many of the calls were being initiated from, but not limited to, the phone number 800-365-2024

21. On multiple occasions, Consumer informed Defendant to immediately cease calling his cellular telephone; however, despite these attempts, Defendant's calls to Consumer's cellular telephone continued.

22. On at least two occasions over the last year, Consumer instructed Defendant's agents to stop calling his cellular telephone.

23. Upon Consumer's receipt of one such call from Defendant, on or about February 3, 2019, Consumer answered the call, received Defendant's artificial or prerecorded message, held on the line to be connected to a live agent/representative and informed said agent/representative that he did not own said debt, and to immediately cease all calls to his cellular telephone; thereby, unequivocally revoking any previously perceived expressed consent to be called using Defendant's Autodialer, predictive dialer, artificial voice or prerecorded message.

24. During the aforementioned phone conversation with Defendant's agent/representative, Consumer explicitly revoked any previously perceived expressed consent Defendant may have believed it had for placement of telephone calls to Consumer's cellular telephone by the use of an Autodialer or artificial voice or prerecorded message.

25. Each subsequent call Defendant placed to Consumer's cellular telephone was done so after he revoked consent and without the express consent of Consumer.

26. Each subsequent call Defendant placed to Consumer's cellular telephone was knowingly and willfully placed to his cellular telephone without express consent.

27. Defendant called Consumer on his cellular telephone in excess of five hundred and forty (540) times since 2017 in attempt to collect an alleged debt.

28. Due to the extreme volume of calls Consumer received, Consumer was unable to maintain a fully contemporaneous call log of each and every call he received

from Defendant; however, the following is a sample of calls Consumer received from December 2018 to March 2019:

| Date | Time | Phone # |
| --- | --- | --- |
| 12/13/2018 | 2:38 PM | 800-365-2024 |
| 12/13/2018 | 7:10 PM | 800-365-2024 |
| 12/14/2018 | 9:45 AM | 800-365-2024 |
| 12/14/2018 | 3:42 PM | 800-365-2024 |
| 12/15/2018 | 9:55 AM | 800-365-2024 |
| 12/15/2018 | 5:15 PM | 800-365-2024 |
| 12/16/2018 | 12:00 PM | 800-365-2024 |
| 12/16/2018 | 4:49 PM | 800-365-2024 |
| 12/17/2018 | 4:28 PM | 800-365-2024 |
| 12/18/2018 | 8:47 AM | 800-365-2024 |
| 12/18/2018 | 6:17 PM | 800-365-2024 |
| 12/19/2018 | 3:04 PM | 800-365-2024 |
| 12/19/2018 | 8:01 PM | 800-365-2024 |
| 12/20/2018 | 8:57 AM | 800-365-2024 |
| 12/20/2018 | 5:43 PM | 800-365-2024 |
| 12/21/2018 | 3:23 PM | 800-365-2024 |
| 12/22/2018 | 5:23 PM | 800-365-2024 |
| 12/23/2018 | 11:42 AM | 800-365-2024 |
| 12/24/2018 | 9:36 AM | 800-365-2024 |
| 12/24/2018 | 4:35 PM | 800-365-2024 |
| 12/26/2018 | 3:03 PM | 800-365-2024 |
| 12/26/2018 | 8:36 PM | 800-365-2024 |

| | | |
|---|---|---|
| 12/27/2018 | 11:58 AM | 800-365-2024 |
| 12/27/2018 | 5:59 PM | 800-365-2024 |
| 12/28/2018 | 3:28 PM | 800-365-2024 |
| 12/28/2018 | 8:08 PM | 800-365-2024 |
| 12/29/2018 | 11:50 AM | 800-365-2024 |
| 12/30/2018 | 3:54 PM | 800-365-2024 |
| 12/31/2018 | 3:58 PM | 800-365-2024 |
| 1/2/2019 | 8:51 AM | 800-365-2024 |
| 1/6/2019 | 3:27 PM | 800-365-2024 |
| 1/7/2019 | 4:23 PM | 800-365-2024 |
| 1/9/2019 | 8:54 PM | 800-365-2024 |
| 1/10/2019 | 2:34 PM | 800-365-2024 |
| 1/10/2019 | 7:51 PM | 800-365-2024 |
| 1/11/2019 | 3:28 PM | 800-365-2024 |
| 1/12/2019 | 3:53 PM | 800-365-2024 |
| 1/13/2019 | 3:58 PM | 800-365-2024 |
| 1/14/2019 | 9:06 AM | 800-365-2024 |
| 1/14/2019 | 5:22 PM | 800-365-2024 |
| 1/15/2019 | 12:42 PM | 800-365-2024 |
| 1/16/2019 | 5:49 PM | 800-365-2024 |
| 1/17/2019 | 7:11 PM | 800-365-2024 |
| 1/19/2019 | 12:37 PM | 800-365-2024 |
| 1/20/2019 | 11:36 AM | 800-365-2024 |
| 1/22/2019 | 2:05 PM | 800-365-2024 |
| 1/23/2019 | 11:38 AM | 800-365-2024 |
| 1/23/2019 | 5:01 PM | 800-365-2024 |

| | | |
|---|---|---|
| 1/24/2019 | 2:23 PM | 800-365-2024 |
| 1/25/2019 | 11:44 AM | 800-365-2024 |
| 1/25/2019 | 5:37 PM | 800-365-2024 |
| 1/26/2019 | 3:44 PM | 800-365-2024 |
| 1/27/2019 | 6:47 PM | 800-365-2024 |
| 1/27/2019 | 3:35 PM | 800-365-2024 |
| 1/28/2019 | 5:15 PM | 800-365-2024 |
| 1/29/2019 | 8:49 AM | 800-365-2024 |
| 1/29/2019 | 4:36 PM | 800-365-2024 |
| 1/30/2019 | 12:09 PM | 800-365-2024 |
| 1/30/2019 | 5:50 PM | 800-365-2024 |
| 1/31/2019 | 2:49 PM | 800-365-2024 |
| 2/1/2019 | 11:02 AM | 800-365-2024 |
| 2/1/2019 | 6:10 PM | 800-365-2024 |
| 2/2/2019 | 9:54 AM | 800-365-2024 |
| 2/2/2019 | 4:54 PM | 800-365-2024 |
| 2/3/2019 | 4:54PM | 800-365-2024 |
| 2/3/2019 | 5:03 PM | 800-365-2024 |
| 2/4/2019 | 6:36 PM | 800-365-2024 |
| 2/5/2019 | 2:47PM | 800-365-2024 |
| 2/6/2019 | 1:53 PM | 800-365-2024 |
| 2/7/2019 | 4:55 PM | 800-365-2024 |
| 2/8/2019 | 3:08 PM | 800-365-2024 |
| 2/9/2019 | 9:49 AM | 800-365-2024 |
| 2/10/2019 | 3:21 PM | 800-365-2024 |
| 2/11/2019 | 4:33 PM | 800-365-2024 |

| | | |
|---|---|---|
| 2/12/2019 | 11:50 AM | 800-365-2024 |
| 2/13/2019 | 7:36 PM | 800-365-2024 |
| 2/18/2019 | 3:29 PM | 800-365-2024 |
| 2/20/2019 | 12:37 PM | 800-365-2024 |
| 2/21/2019 | 8:09 AM | 800-365-2024 |
| 2/22/2019 | 3:19 PM | 800-365-2024 |
| 2/23/2019 | 9:57 AM | 800-365-2024 |
| 2/24/2019 | 2:56 PM | 800-365-2024 |
| 2/24/2019 | 6:21 PM | 800-365-2024 |
| 2/25/2019 | 1:30 PM | 800-365-2024 |
| 2/25/2019 | 6:11 PM | 800-365-2024 |
| 2/26/2019 | 2:26 PM | 800-365-2024 |
| 2/27/2019 | 8:49 AM | 800-365-2024 |
| 2/28/2019 | 8:59 AM | 800-365-2024 |
| 3/1/2019 | 1:41 PM | 800-365-2024 |
| 3/3/2019 | 12:49 PM | 800-365-2024 |
| 3/3/2019 | 7:27 PM | 800-365-2024 |
| 3/4/2019 | 7:29 PM | 800-365-2024 |
| 3/5/2019 | 7:33 PM | 800-365-2024 |
| 3/6/2019 | 8:55 AM | 800-365-2024 |
| 3/6/2019 | 5:31 PM | 800-365-2024 |
| 3/7/2019 | 8:45 AM | 800-365-2024 |
| 3/7/2019 | 4:12 PM | 800-365-2024 |
| 3/8/2019 | 12:31 PM | 800-365-2024 |
| 3/8/2019 | 7:06 PM | 800-365-2024 |

29. 'Defendant has or should be in possession and/or control of, call logs, account notes, Autodialer reports and/or other records that detail the exact number of calls it placed to Consumer.

30. Despite actual knowledge of its wrongdoing, Defendant continued its campaign of abuse by continuing to call Consumer despite not having Consumer's express consent to call his cellular telephone.

31. Defendant has corporate policies and/or procedures to use an Autodialer or artificial voice or prerecorded message, and to place autodialed calls, just as it did to Consumer's cellular telephone in this case, with no way for the called party and recipient of the calls, including Defendant, to permit, elect, or invoke the removal of Consumer's cellular number from Defendant's call list.

32. The structure of Defendant's corporate policies and procedures permits the continuation of calls to individuals like Consumer, despite these individuals revoking any consent, or perceived consent, Defendant may have believed it had to place such calls.

33. Defendant's corporate policies and procedures provided no means for Consumer to have his cellular number removed from Defendant's call list; or, otherwise invoke and/or request the cessation and/or suppression of calls to Consumer from Defendant.

34. Defendant has corporate policies or procedures of using an Autodialer or an artificial voice or prerecorded message to collect alleged debts from individuals, such as Consumer, for its financial benefit.

35. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call consumers.

36. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

37. Defendant has numerous complaints against it, across the country, asserting that its Autodialer continues to call individuals who have revoked consent to be called by Defendant.

38. Defendant knowingly employs methods and/or has corporate policies and/or procedures designed to harass and abuse individuals such as Consumer.

39. Defendant knowingly employs methods that do not permit the cessation or suppression of autodialed calls to Consumer's cellular telephone.

40. None of Defendant's telephone calls placed to Consumer were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

41. As recently acknowledged by Judge Easterbrook of the Seventh Circuit Court of Appeals in *Patriotic Veterans, Inc. v. Zoeller*, "every call uses some of the phone owner's time and mental energy, both of which are precious."

42. For each call Defendant placed to Consumer's cellular telephone without express consent, Consumer suffered from the occupation of his cellular telephone line and cellular telephone by unwelcomed calls which made the cellular phone unavailable for legitimate incoming or outgoing calls.

43. For each call Defendant placed to Consumer's cellular telephone without express consent, Consumer suffered from unnecessary expenditure of his time. The time

Consumer spent on answered calls was unnecessary because he repeatedly asked for calls to stop. Additionally, Consumer expended unnecessary time for unanswered calls by dealing with notifications and call logs that reflected the unwanted calls. Furthermore, this also impaired the usefulness of these features of Consumer's cellular telephone, which are designed to inform the user of important missed communications.

44. Each and every call placed without express consent by Defendant to Consumer's cell phone was an injury in the form of a nuisance and annoyance to the Consumer.

45. Each and every call Defendant placed to Consumer's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Consumer's cellular telephone's battery power.

46. Each and every call Defendant placed to Consumer's cellular telephone without express consent resulted in the injury of trespass to Consumer's chattel, namely his cellular telephone and cellular telephone services.

47. As a result of aforementioned tenacious phone calls and collection efforts, Consumer was affected personally, professionally, and individually, as he experienced an invasion of privacy and the intrusion upon his right of seclusion. Consumer receives work and emergency family calls on his cell phone such that each call from Defendant required his attention and interrupted his ongoing personal or professional activities. Consumer also suffered from stress, fear, worry, and indignation. Additionally, Consumer experienced loss of privacy, and strain was placed on his marriage and familial relationships. Furthermore, Consumer was hindered by the loss of phone battery life and phone minutes

as well as the cost of additional charging, and the intrusion upon and occupation of the capacity of his cell phone. All of the abovementioned were caused by, and/or directly related to, Defendant's attempts to collect a consumer debt allegedly owed by Consumer.

## COUNT I
### (Violation of the TCPA)

48. Plaintiff incorporates and realleges paragraphs one (1) through forty-seven (47) as if fully set forth herein.

49. Defendant willfully violated the TCPA with respect to Consumer, especially for each of the Autodialer calls it made to Consumer's cellular telephone after Consumer notified and requested Defendant that he wished for the calls to immediately cease.

50. Defendant repeatedly placed non-emergency telephone calls to Consumer's cellular telephone using an Autodialer or artificial voice or prerecorded voice message without Consumer's prior express consent and in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

Respectfully Submitted,

   /s/Hyatt B. Shirkey
Hyatt B. Shirkey, *Esquire*
Virginia Bar Number:80926
Hyatt Browning Shirkey Law Firm
3735 Franklin Rd. S.W., Suite 251
Roanoke, VA 24014
Office: (540) 324-9288
Fax:    (540) 986-2199
[Hyatt@hbsesqfirm.com]
*Counsel for Plaintiff*