UNITED STATES DISTRICT COURT OF VIRGINIA
WESTERN DISTRICT

EDMOND M. STANLEY, JR.,

        Plaintiff,

v.                                                CASE NO.: 7:19-cv-00337-EKD

CAPITAL ONE FINANCIAL
CORPORATION,

        DEFENDANT.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT, CAPITAL ONE BANK (USA), N.A.'S MOTION TO STAY PROCEEDINGS [DE 15]**

Plaintiff, EDMOND M. STANLEY ("Plaintiff"), by and through the undersigned counsel, hereby submits this Response in Opposition to Defendant, CAPITAL ONE BANK (USA), N.A.'s ("Capital One") Motion to Stay Proceedings [DE 15]. Capital One fails to adequately establish why the instant case will be impacted by the pending appeal from the United States Court of Appeals for the Fourth Circuit in *Snow v. General Electric Co.,* No. 5:18-CV-511-FL, 2019 U.S. Dist. LEXIS 99760 (E.D.N.C. June 14, 2019), appeal docket No. 19-1724 (July 11, 2019) (hereinafter "*Snow*"), which concerns the proper definition of an automatic telephone dialing system ("ATDS") in Fourth Circuit. More specifically, Capital One's Motion fails or three separate reasons. First, Capital One wholly neglects to assert—much less establish—the factual basis that its dialing system would not qualify as an ATDS[1] under only one of the proposed definitions that it asserts the Fourth Circuit is considering. Rather, Capital One appears to assert ironically that a factual dispute[2] regarding the capacity of its equipment requires a stay of factual discovery

---

[1] Capital One asserts without any specific factual allegations that "[its] dialing system does not have the current or present capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator . . . [and] to dial such numbers' in order to qualify as an ATDS."

[2] A dispute which it has evaded discovery on through this point in the case.

1

regarding its equipment. Second, Capital One completely ignores the independent issue that, regardless of whether the subject dialing system qualifies as an ATDS, it has liability for use of prerecorded and automated messages sent to Plaintiff without his consent. Third, and finally, Capital One fails to establish how the ruling it anticipates[3] in *Snow* will impact the analysis of the dialing system at issue in this case and erroneously insinuates the stay would constitute a short period when, in all actuality, the parties have absolutely no way to determine when the ruling in *Snow* will be issued, if the FCC might issue further guidance, or whether there will be further appeals of any potential ruling.

For these reasons, as further detailed below, this Court should not stay the present case pending further rulings from the FCC or a decision in *Snow* as a delay in this proceeding fails to conserve resources nor does it significantly limit discovery. Instead, a stay would merely result in a pointless delay of justice. As such, Plaintiff opposes Capital One's Motion and in support of such states as follows:

## **Statement of Relevant Facts**

Capital One began its campaign of calling Plaintiff's cellular telephone number in effort to collect a debt that he did not owe, but which was created in his name as the result of identity theft.

---

[3] Capital One argues that it "obviously" could not have employed an ATDS to call Plaintiff because it was intentionally calling Plaintiff's phone number (which it argues was provided by the identity thief) and thus "obviously" could not have been using a "random or sequential number generator" to place such call. Ironically, this "obvious" conclusion dramatically undermines the very definition of ATDS that it advocates that this Court ultimately adopt. Capital One argues that "capacity" should equate to "present use" of a random or sequential number generator. It obviously could not have been Congress's intent for the TCPA to only apply to calls that were *made* using a random or sequential number generator as it wrote the TCPA to require "express consent" to make such calls. It is unfathomable that Congress intended for a caller to obtain universal express consent to make calls to "randomly generated" numbers (i.e. calls where the called party is not known) as it would be impossible for consent to be obtained from the entire universe of recipients (absent obtaining universal consent for all potential recipients and their numbers prior to "randomly" calling them). As such, it is logical to assume that Congress intentionally used the term "capacity" to mean more than "present use."

Plaintiff has alleged that Capital One utilized an ATDS[4] and, for most of the hundreds of calls placed to Plaintiff, artificial or prerecorded voice were used. Plaintiff contends that all of such calls were without his consent. According to Plaintiff, Capital One continued to call his cellular phone even after Plaintiff requested for such calls to stop.

Capital One's repeated calls to Plaintiff were a clear and willful violation of 47 U.S.C. § 227, *et seq.*, the Federal Telephone Consumer Protection Act ("TCPA"). As such, Plaintiff filed the Complaint in this action [DE 1] alleging damages because of Capital One's aforementioned violations of the federal TCPA on two separate grounds. Plaintiff asserts not only that the calls placed with an ATDS violated the TCPA, but that the calls through the use of prerecorded or automated messages without consent also independently violated the statute.

Following several informal extensions to allow Capital One to research the allegations, Capital One filed its Answer to Plaintiff's Complaint [DE 3]. On August 21, 2019, this Court entered a Scheduling Order [DE 10]. Plaintiff served written discovery requests and a b6 Notice of Deposition scheduled for October 18, 2019 on August 28, 2019. Following agreed extensions to respond to the written discovery, Capital One served answers on October 18, 2019. Through several delays in written discovery and scheduling snafus, Plaintiff's deposition of a corporate representative has been rescheduled multiple times and is now pending for December 19, 2019. Despite several good faith conferences between the parties regarding written discovery, Plaintiff still has not received an answer to the foundational request that Capital One identify the dialing system(s) used to place calls to Plaintiff's cellular phone.

Then, on November 18, 2019, Capital One filed its Motion to Stay Proceedings [DE 15]. Despite Plaintiff's allegations that Capital One's dialing system has the capacity to randomly or

---

[4] Specifically alleging that the system was one "which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator."

3

sequentially generate numbers, Capital One asserts—without allegations or factual support—that its system does not qualify as an ATDS. As grounds for its Motion, Capital One alleges that this Court cannot interpret the legal definition of ATDS and asserts that the dialing system(s) used do not qualify as an ATDS under its proposed definition of such. Nevertheless, in its Motion Capital One refused to provide any information whatsoever as to the dialing system(s) it uses to call Plaintiff's cellular phone, just as it purposely withheld such information in response to Plaintiff's Discovery requests.

### Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 229 U.S. 248, 254 (1936). Whether to stay the proceedings is entrusted to the discretion of the district court. *See id.* 254-55 ("How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."). Regardless, "[t]he proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997), citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis* at 255.

The Supreme Court's landmark decision in *Landis* demands that when a litigant seeks to stay a proceeding pending the outcome of litigation in a wholly separate action[5], the litigant

> must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.

*Id.* at 255. *See also Mims v. Wal-Mart Stores, Inc.*, No. 12-244, 2012 WL 12893691, at *2 (N.D. Ala. Apr. 13, 2012) (denying request for stay). Thus, in this matter, the burden rests wholly on

---

[5] As the Capital One seeks to do here.

Capital One to justify why Plaintiff should be compelled to stand aside pending a decision from the FCC or the Court in *Snow*. Capital One, however, has failed to present that justification.

In determining whether to grant or deny a stay, "courts consider whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party, whether a stay will simplify the issues in question and trial of the case, whether discovery is completed and whether a trial date has been set." *Remington Arms Co., Inc. v. Modern Muzzleloading, Inc.* United States District Court, WL 1037920 (M.D. N.C. 1998) citing *Target Therapeutics Inc v. SciMed Life Sys. Inc.*, U.S.P.Q.2d 2022, 2013 (N.D. Cal. 1995). It is therefore commonplace for federal courts to decline to stay district court proceedings when the parties have already engaged in discovery, mediated the case, and a trial date has been set. *Remington Arms Co., Inc. citing Wayne Automation Corp. v. R.A. Pearson, Co.*, 782 F. Supp. 516, 519 (E.D. Wash. 1991).

Courts must also consider the timing of a request to stay proceedings. It is well established that parties should not be permitted to abuse the judicial process by making an untimely seeking a stay. Courts frown upon a party's unjustified delay in requesting a stay and should view any such delay as a compelling reason for denial of a motion to stay.[9]

<strong><u>Argument</u></strong>

A. **<u>Capital One' Motion Must Be Denied Because Neither *Snow* Nor The FCC Ruling Will Be Dispositive.</u>**

Capital One fails to present evidence which demonstrates a favorable guidance in from the Fourth Circuit in *Snow* or the FCC will have either a dispositive or significant impact on the outcome of this case. Capital One nonetheless speculates that a favorable ruling may "have a tremendous impact on, and might even dictate, the outcome of this case." Such baseless supposition cannot serve as the foundation to stay these proceedings and Capital One's Motion must be denied.

Furthermore, Capital One has made virtually no effort to demonstrate how the *Snow* ruling

5

or any anticipated FCC guidance would alter whether Capital One's dialing system qualifies as an ATDS under the plain language of the statutory definition. The TCPA plainly states that, to qualify as an ATDS under the TCPA, the equipment must have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers. *See* 47 U.S.C. § 227(a)(1)(A)-(B); *also see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 950 (9th Cir. 2009). Contrary to what Capital One would have this Court believe, neither the *Snow* appeal nor the FCC's anticipated guidance seeks to eliminate the statutory definition of an ATDS.

Moreover, even if the interpretation of "capacity" of an ATDS within the statutory definition is decided in a manner more favorable to Capital One, the issue as to whether Capital One's dialing system qualifies as an ATDS under the TCPA and other holdings still would need to be resolved by this Court. Thus, the *Snow* ruling will not be dispositive of this matter and Capital One's assertions otherwise are incorrect. As the *Snow* ruling will not obviate the need for further litigation in this matter, Capital One's Motion is baseless and must be denied.

**B. Federal Courts Have Already Denied Numerous Motions to Stay Premised Upon the FCC's potential guidance.**

Federal courts across the country have refused to stay TCPA cases such as this based on the pendency of the FCC's anticipated ruling. S*ee Wilson v. PL Phase One Operations L.P.,* Civil Action No. DKC 18-3285 (D. Md. Sep. 27, 2019); *Nicholson v. REI Energy, L.L.C.,* 370 F. Supp. 3d 1199 (D. Or. 2019); *Wright v. eXP Realty, L.L.C.,* 2019 WL 2411312 (M.D. Fla. June 7, 2019); *Samson v. United Healthcare Servs., Inc.,* 2019 WL 2173454 (W.D. Wash. May 20, 2019); *Castrellono v. Fitness Club Mgmt., L.L.C.,* 2019 WL 3099654 (C.D. Cal. Apr. 17, 2019); and, *Singer v. Las Vegas Athletic Clubs,* 376 F. Supp. 3d 1062, 1072 (D. Nev. Mar. 25, 2019).

Paradoxically, many defendants in TCPA cases (including Capital One[6]) have sought stays of these matters for many years on the grounds that the FCC's prior guidance needed to be overturned in light of what they argued was the clear statutory language. Nevertheless, even in 2012, this District has held that it is well-positioned to interpret the statute stating in no uncertain terms that "[a] district court is suited to resolve issues of statutory interpretation of the ... term 'capacity.'" *Beiler v. GC Services L.P.,* 61 Communications Reg. (P&F) 710 (M.D.N.C. Nov. 3, 2014).

The holding in *Beiler* is strikingly similar to the recent holding of another district court in the Fourth Circuit. *See Wilson v. PH Phase One Operations L.P.*, D. Md. No. CV DKC 18-3285, 2019 WL 4735483, at *9 (D. Md. Sept. 27, 2019). There, the defendants argued that a stay was warranted under the primary jurisdiction on the grounds that the FCC was actively considering how to interpret and apply the definition of an ATDS. *Id.* Rejecting the defendants' position, the district court ruled that "[r]eferral to the FCC is not appropriate at this time as the matters here, although technical, are within the conventional expertise of judges." *Id.* In doing so, the district court determined that the issue "was within [its] conventional expertise." *Id.*

C. **Capital One Will Not Experience Hardship by Denial of Defendant's Motion.**

Capital One cannot show any actual harm or prejudice should this case continue. Capital One instead reasons that the interest of judicial economy favors stay. It contends that the decision in *Snow* **may** affect the standards that would be relevant to the present case. However, Capital One fails to carry the burden of demonstrating the need for a delay.

Capital One's argument is meritless because Capital One will not experience a hardship or inequity if the Motion is denied. Being required to defend a suit, without more, does not constitute

---

[6] *See e.g. Rogers v Capital One Bank (USA), N.A.*, 1:15-cv-04016-TWT (Northern District of Georgia) DEFENDANT CAPITAL ONE'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION TO STAY [DE 13] and DEFENDANT CAPITAL ONE'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY [DE 20].

a clear case of hardship or inequity within the meaning of *Landis*.[7] Furthermore, the parties will still need to continue litigation, as any ruling in *Snow* will not be dispositive of this action given that the dialing system has not been disclosed and no change to the definition of an ATDS impacts the TCPA liability arising from the use of prerecorded voice or automated voice calls placed to Plaintiff. These issues require largely the same discovery that Capital One asserts will be eliminated by this stay.

### D. Plaintiff Will Suffer Prejudice and a Tactical Disadvantage

As stated in *Remington Arms*, a court is to consider whether granting a motion to stay will prejudice or present a clear tactical disadvantage to the non-moving party, whether a stay will simplify the issues in question and trial of the case, and whether a trial date has been set. In the case at bar, Plaintiff will experience hardship, undue prejudice, and be placed at a decided tactical disadvantage should Capital One's Motion be granted. A stay would be highly prejudicial to Plaintiff by delaying litigation for an unknown length of time. Indeed, no date has been set for a ruling from the FCC or the appeal in *Snow* and Capital One has failed to present any evidence to the contrary. It is well-stablished that such an open-ended delay results in undue prejudice to a party, thereby warranting a denial of Capital One's Motion. *See Molnar v. NCO Financial Systems, Inc.*, 20158 WL 1906346 at *4 (S.D. Cal. 2015) (holding that "an open ended stay will likely cause delay and prejudice to Plaintiff's case) citing Cf. *Trainor v. Citibank, N.A.*, 2014 WL 2574527 at *2 (D. Minn. 2014).

Moreover, not only will Plaintiff be placed at an unfair tactical disadvantage as he has attempted to conduct discovery and based his strategy with an eye toward a 2020 trial date as is currently scheduled, but a ruling in *Snow* will not serve to simplify the issues in this case or be

---

[7] *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

dispositive of any issue in this case. Litigation will still need to proceed to determine whether Capital One's dialing system falls under the statutory definitions for an ATDS. Capital One has failed to present any evidence to the contrary under either the present standard or a hypothetical standard which might be adopted. Finally, as the trial term has already been set, Capital One's Motion fails to satisfy the requirements for a stay as set forth in *Remington Arms* and other holdings stated herein and, thus, Capital One's Motion must be denied.

## Conclusion

Capital One has not presented a scintilla of evidence demonstrating how a resolution of *Snow* will be dispositive or narrow the issues involved in the litigation of this case. Capital One's Motion is based on mere conjecture and speculation. Furthermore, Capital One has failed to demonstrate how it will experience legal hardship if it's Motion is denied. Based upon the foregoing, this Court should deny Capital One's Motion.

Respectfully submitted this 2nd day of December, 2019.

> */s/ Hyatt B. Shirkey*
> Hyatt B. Shirkey Esq.
>    Virginia Bar No. 80926
> **Hyatt Browning Shirkey Law Firm**
> 3735 Franklin Rd. SW, Ste. 251
> Roanoke, VA 24014
> Tel: 540.324.9288
> Fax: 540.986.2199
> Email: Hyatt@HBSEsqFirm.com
> *Counsel for Plaintiff*
>
> Jared Michael Lee, Esq. (*Pro Hac*)
>    Florida Bar No. 0052284
> **Jackson Lee | PA**
> 1985 Longwood Lake Mary Rd. | Ste. 1001
> Longwood, FL 32750
> Tel: (407) 477-4401
> Fax: (407) 477-4949
> Email: Jared@JacksonLeePA.com
>           Service@JacksonLeePA.com

9

Melissa@JacksonLeePA.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on December 2, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF filing system and a Notice of this filing will be sent to the following by operation of the Court's Electronic Filing System:

Constantinos G. Panagopoulos, Esq.
Ballard Spahr LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006-1157
Tel: 202.661.2202
Email: cgp@ballardspahr.com

Daniel JT McKenna, Esquire
1735 Market Street
Philadelphia, PA 19103-7599
Tel: 215-665-8500
Fax: 215-864-8999
Email: mckennad@ballardspahr.com

*/s/ Hyatt B. Shirkey*
Hyatt B. Shirkey Esq.