IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| EDMOND M. STANLEY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:19-CV-00337 |
| | ) | |
| CAPITAL ONE FINANCIAL CORP. | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Edmond Stanley, Jr. filed a complaint in this court alleging that Capital One Financial Corp. (Capital One) violated the Federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, by repeatedly calling Stanley's cell phone to collect a debt that arose from identity theft. Stanley asserts that Capital One repeatedly called him using an "automated telephone dialing system" (ATDS), which the TCPA defines as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). He further asserts that Capital One utilized an artificial or prerecorded voice in violation of § 227(b)(1)(A). *Id.* § 227(b)(1)(A) ("It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ."). Capital One continued making these calls despite Stanley's requests for the calls to stop.

This matter is currently before the court on Capital One's motion to stay the case pending a ruling either from the Federal Communications Commission (FCC) or the United States Supreme

Court[1] regarding the correct interpretation and application of the TCPA's definition of an ATDS. (Dkt. No. 15.) For the reasons set forth below, the court will deny Capital One's motion without prejudice.

I. BACKGROUND

In 2015, the FCC released a ruling that sought to clarify certain portions of the TCPA, including the definition of an ATDS. The D.C. Circuit vacated that ruling in 2018, in a decision binding on this court. *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018); *see also King v. Time Warner Cable Inc.*, 894 F.3d 473, 476 n.3 (2d Cir. 2018) ("When agency regulations are challenged in more than one court of appeals, as they were in the present case, 28 U.S.C. § 2112 requires that the multidistrict litigation panel consolidate the petitions and assign them to a single circuit. Challenges to the 2015 Order were assigned to the D.C. Circuit, which thereby became 'the sole forum for addressing . . . the validity of the FCC's' order." (citing *GTE S., Inc. v. Morrison*, 199 F.3d 733, 743 (4th Cir. 1999))). Since 2018, courts remain split regarding the proper definition of an ATDS.

Because Stanley's complaint alleges a violation of the TCPA, Capital One asserts that a key issue in this case is the proper interpretation of the TCPA's definition of an ATDS. It notes that two events prompted the present motion. First, the FCC has issued a public notice seeking comments on the statutory definition of an ATDS. According to Capital One, the FCC's comment period closed on October 24, 2018. Second, the defendant in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019), has filed a petition for a writ of certiorari which is currently pending before the Supreme

---

[1] Capital One originally sought a stay pending resolution of the appeal of *Snow v. Gen. Electric Co.*, No. 5:18-CV-511-FL, 2019 WL 2500407 (E.D.N.C. June 14, 2019), before the Fourth Circuit. That appeal was voluntarily dismissed on December 30, 2019. Nonetheless, Capital One argued that the court should stay Stanley's case pending resolution of *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019), which is currently before the Supreme Court on a petition for certiorari.

Court. Accordingly, Capital One requests a stay pending either guidance from the FCC or resolution of the *Duguid* appeal if the petition is granted.

II. DISCUSSION

Capital One asserts two possible avenues to staying Stanley's case: the primary jurisdiction doctrine or a stay pursuant to *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), and the court's inherent authority.

**A. Primary Jurisdiction**

In *Global Crossing Telecommunications, Inc. v. nTelos Telephone, Inc.*, No. 7:11-cv-00503, 2012 WL 4459946 (W.D. Va. June 1, 2012), this court discussed the primary jurisdiction doctrine as follows:

> The doctrine of primary jurisdiction enables a court, under appropriate circumstances, to "refer" certain issues to an administrative agency and then stay the proceedings or dismiss the case without prejudice. *See Reiter v. Cooper*, 507 U.S. 258, 268–69 (1993). The doctrine "allows a federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." *Nat'l Commc'ns Ass'n v. AT & T*, 46 F.3d 220, 222–23 (2d Cir. 1995) (quoting *Far E. Conference v. United States*, 342 U.S. 570, 574 (1952)). Generally, courts apply primary jurisdiction in cases involving technical, intricate questions of fact and policy that Congress has assigned to a particular agency. *Id.* There is, however, "no fixed formula . . . for applying the doctrine of primary jurisdiction." *Envtl. Tech Council v. Sierra Club*, 98 F.3d 774, 789 (4th Cir. 1996) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)).
>
> To focus the analysis, courts often employ a four-factor test:
>
> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
> (2) whether the question at issue is particularly within the agency's discretion;
> (3) whether there exists a substantial danger of inconsistent rulings; and
> (4) whether a prior application to the agency has been made.

3

> *Nat'l Commc'ns Ass'n*, 46 F.3d at 222; *Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va.*, 759 F. Supp. 2d 772, 786 (E.D. Va. 2011). The doctrine is particularly appropriate when the issue involves technical questions of fact bound up with an assessment of industry standards. *See Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 305 (1976); *Total Telecomm. Svcs., Inc. v. Am. Tel. & Tel. Co.*, 919 F. Supp. 472, 480 (D.D.C. 1996) ("Questions involving standard industry practices should also be entertained by the FCC." (citing *Ricci v. Chi. Mercantile Exch.*, 409 U.S. 289, 305 (1973))). In any case, the decision to apply the doctrine is a matter left to the discretion of the trial court. *See Envtl. Tech. Council*, 98 F.3d at 789.

*Id.* at *2–3.

Considering Capital One's business reaches across the country and the TCPA is a federal law, this issue may very well be subject to inconsistent rulings. Additionally, the FCC has sought comments on a proposed ruling after *ACA*, apparently satisfying the fourth prong of the primary jurisdiction analysis. That said, there is no indication *when* the FCC will issue its ruling on the definition of an ATDS. *See Nicholson v. REI Energy, LLC*, 370 F. Supp. 3d 1199, 1206 (D. Or. 2019) ("[A] stay based on the FCC's ruling would be indefinite, particularly as that ruling could be subject to further challenge."). As for the second factor, this is also likely within the FCC's discretion, as the TCPA generally gives the FCC authority to interpret the TCPA and promulgate regulations to implement the statute. 47 U.S.C. § 227(b)(2).

The more difficult question is whether this statutory interpretation involves technical issues and industry practices or whether it falls within the conventional experience of judges. Capital One cites several cases decided before the FCC's 2015 guidance in which courts stayed similar cases pending the FCC's ruling. *See e.g.*, *Stewart v. T-Moble USA, Inc.*, No. 4:14-cv-02086, 2014 WL 12614418 (D.S.C. Oct. 8, 2014) ("[A]lthough the FCC's position would be subject to review by the judiciary for reasonableness, the agency's views are the logical place for the judiciary to start."). However, this approach was not uniform, even within the Fourth Circuit. For example, in *Beiler v. GC Servs. L.P.*, No. 1:13cv869, 2014 WL 5531168 (M.D.N.C. Nov. 3, 2014), the court denied a

motion to stay pending the resolution of four petitions for rule making submitted to the FCC. It noted the uncertainty regarding how long the FCC would take to issue a final order along with the fact that statutory interpretation was well within the purview of the court.

> While the doctrine of primary jurisdiction may be invoked in cases involving statutory interpretation, such situations typically involve resolution of an issue of first impression, or of a particularly complicated issue best resolved by the administrative agency. Interpretation of these statutory terms do not require the FCC's policy expertise or specialized knowledge and are matters safely within the conventional experience of judges. Indeed, courts and the FCC have interpreted these statutory terms in the past.

*Id.* at *5 (quoting *Pimental v. Google, Inc.*, No. C-11-02585-YGR, 2012 WL 1458179, at *3 (N.D. Cal. Apr. 26, 2012)).

Many of the cases Capital One cites for the proposition that the court should issue a stay were decided before the FCC's 2015 ruling as courts awaited the FCC's guidance. In the aftermath of the D.C. Circuit's decision in *ACA*, it appears courts have been less likely to stay their cases under the primary jurisdiction doctrine. For example, Stanley cites to *Wilson v. PH Phase One Operations L.P.*, No. DKC 18-3285, 2019 WL 4735483 (D. Md. Sept. 27, 2019), in which the District of Maryland summarily denies a motion to stay. There, the court found that "[r]eferral to the FCC is not appropriate at this time as the matters here, although technical, are within the conventional expertise of judges." *Id.* at *9.

The fact that several circuit courts have considered this issue further suggests that it is within the conventional expertise of judges. *See, e.g.*, *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018); *King v. Time Warner Cable Inc.*, 894 F.3d 473, 476 n.3 (2d Cir. 2018); *see also Nicholson*, 370 F. Supp. 3d at 1206 ("As one other district court has observed, '[t]he Ninth Circuit's willingness to decide the meaning of an ATDS in *Marks* . . . indicates that defining that term . . . is within the conventional experience of judges and does not involve technical or policy considerations that would place it particularly within the FCC's field of expertise or discretion.'"

(alteration in original) (citing *Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2018 WL 649964 (E.D. Cal. Dec. 10, 2018))).

Considering that any stay pending an FCC ruling would be indefinite, that this issue is within the expertise of judges, and that several courts of appeal have, in fact, provided guidance this court may follow, the court will deny Capital One's motion as to its request for a stay under the primary jurisdiction doctrine.

**B. Inherent Authority to Stay Pursuant to *Landis***

Alternatively, Capital One seeks a stay pending resolution of a *potential* appeal to the Supreme Court in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019).

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936); *see also Volvo Grp. N. Am., LLC v. Truck Enters., Inc.*, 2018 WL 3599198, at *2 (W.D. Va. 2018). In *Stinnie v. Holcomb*, 396 F. Supp. 3d 653 (W.D. Va. 2019), this court granted a stay after balancing the factors of "judicial economy, the hardship and inequity to the moving party in the absence of a stay, and the potential prejudice to the non-moving party in the event of a stay." *Id.* at 658.

With regard to the possible prejudice to Stanley, Capital One asserts that he would suffer minimal damage, if any, from staying the case. It states that collection calls to Stanley have ceased such that the only damage would be a delay in litigation and any monetary award. It cites *Doerken v. USAA Savs. Bank*, 2017 WL 1534186, at *2 (C.D. Cal. Apr. 26, 2017), for the proposition that

6

"there is no likelihood of damage or harm to the non-moving party merely because a stay could cause delay to the plaintiff in seeking monetary damages." In response, Stanley asserts that courts have refused to stay cases where the delay would be for an unknown period of time. He cites to *Molnar v. NCO Fin. Sys., Inc.*, No. 13-cv-00131-BAS(JLB), 2015 WL 1906346 (S.D. Cal. Apr. 20, 2015), in which the court declined to grant a stay pending an FCC ruling. *Id.* at *4 ("[T]he court's interest in expeditiously resolving this case weighs against a stay pending resolution by the FCC that is both uncertain and may not even address an issue material to this case."). The court agrees that an indefinite stay is inappropriate here. Capital One asks the court to stay the case pending either an FCC ruling or the Supreme Court's ruling in *Duguid*. However, there is no indication when the FCC may issue a ruling, and the Supreme Court has not yet scheduled the case for oral argument or even agreed to grant certiorari. Therefore, any stay at this point would be indefinite and prejudicial to Stanley.

On the other hand, if the case were to proceed, Capital One asserts that it will be required to respond to discovery and incur costs of preparing for trial that may be unnecessary depending on the outcome of the FCC ruling or *Duguid*. For example, it argues that if the parties knew the correct definition of an ATDS, it could help focus discovery and may avoid the retention of costly expert witnesses. Stanley disagrees, noting that a portion of his case relies not on the definition of an ATDS, but instead on whether Capital One used an artificial or prerecorded voice, and that discovery therefore would not be affected by either the FCC's ruling or the Supreme Court's decision.

The court acknowledges that a clear definition of an ATDS may help focus discovery but questions to what extent a stay would preserve the parties' time or expense at this stage of litigation. Moreover, the Supreme Court has requested additional briefing on the petition for certiorari in *Duguid* such that it is unclear when the Court would issue a ruling on the merits of that case, if at

7

all. Accordingly, this court will deny the motion without prejudice with regard to Capital One's argument under *Landis*.

The court finds that this outcome preserves judicial economy by preventing an indefinite stay while nonetheless leaving open the possibility of revisiting a stay if necessary. As an example, if the Supreme Court denies the defendant's petition for certiorari in *Duguid*, or if the parties find through discovery that Capital One's dialer would meet any proposed definition of an ATDS, then the case will likely proceed without the need for a stay. If, however, the Supreme Court grants the petition for certiorari in *Duguid* and the parties believe the Supreme Court's ruling will be necessary to the resolution of this case, either party may file a subsequent motion to prevent relitigating issues either at trial or on appeal.

### III. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Capital One's motion to stay (Dkt. No. 15) is hereby DENIED WITHOUT PREJUDICE. The clerk is directed to provide copies of this memorandum opinion and order to all counsel of record.

Entered: January 8, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge